**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **GUSTAVO PARDO-MANRIQUE**, *individually and on behalf of a class of similarly situated persons,*<br><br>*Plaintiff*,<br><br>v.<br><br>**CHOBANI, LLC,**<br><br>*Defendant*. | Case No.: 6:26-cv-2009<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

**COMES NOW** the Plaintiff, **GUSTAVO PARDO-MANRIQUE** ("Plaintiff" or "Mr. Pardo-Manrique"), individually and on behalf of all others similarly situated, by and through the undersigned counsel, and complains of the Defendant, **Chobani, LLC** ("Chobani" or "Defendant"), stating as follows:

## DESCRIPTION OF THE CASE

1. Defendant formulates, labels, markets, distributes, and sells the Chobani® line of yogurt that Defendant labels "Zero Sugar" (each a "Product" and together the "Products").

2. Plaintiff brings this action on behalf of himself and a Class of similarly situated consumers who purchased any of the Products, which include, without limitation, all "Zero Sugar" flavors and pack configurations of the Chobani® Zero Sugar Greek Yogurt line including:

a. Chobani® Zero Sugar Greek Yogurt Mixed Berry Flavored;

b. Chobani® Zero Sugar Greek Yogurt Peach Flavored;

c. Chobani® Zero Sugar Greek Yogurt Milk & Cookies Flavored;

d. Chobani® Zero Sugar Greek Black Cherry Flavored;

e. Chobani® Zero Sugar Greek Blueberry Flavored;

f. Chobani® Zero Sugar Greek Toasted Coconut Vanilla Flavored;

g. Chobani® Zero Sugar Greek Vanilla Flavored;

h. Chobani® Zero Sugar Greek Strawberry Cheesecake Flavored; and

i. Chobani® Zero Sugar Greek Key Lime Pie Flavored.

3. Throughout this Complaint, Plaintiff uses the Chobani® Zero Sugar Greek Yogurt Mixed Berry Flavored (the "Representative Product") as a representative example. The Representative Product is illustrative of Defendant's uniform "Zero Sugar" representation and is not the only Product at issue. As alleged below, the "Zero Sugar" representation, and the allulose sugar ingredient that contradicts it, are common to all of the Products regardless of flavor or pack size.

4. Defendant sold, or otherwise provided, the Products to Publix, Target, Walmart, Amazon, and other retailers for resale to and purchase by consumers nationwide, and in the state of Florida.

5. Defendant thereby engaged in "trade or commerce" as defined by § 501.203(8), Fla. Stat.

6. Defendant prominently and conspicuously markets and sells the Products as “Zero Sugar” (the “Representation”) on the front of the Products' packaging and in its online listings.

7. The Representation is a material claim about the basic nature and composition of the Products. It is an express, objective, and quantitative claim about a measurable physical attribute of the Products.

8. By labeling and advertising the Products as “Zero Sugar,” Defendant represents to reasonable consumers, including Plaintiff, that the Products contain no sugar.

9. That representation is false. Each serving of the Representative Product contains allulose. Allulose is a monosaccharide and therefore a sugar under the federal and Florida labeling standards described below.

10. A “sugar free,” “no sugar,” or “zero sugar” claim is permitted only if, among other requirements, the food contains no ingredient that is a sugar *See* 21 C.F.R. § 101.60(c)(1)(ii). Allulose is such an ingredient. The Representation is therefore false, and the Products are misbranded under Florida's food law, which adopts these federal labeling requirements as state law.

11. Reasonable consumers, including Plaintiff, purchased the Products on the reasonable but mistaken belief that they contained no sugar.

12. Defendant’s conduct violates Florida’s Deceptive and Unfair Trade Practices Act, § 501.201, *et seq.*, Fla. Stat. (“FDUTPA”), Florida's prohibition against

false and misleading advertising, § 817.41, Fla. Stat., and is otherwise grounds for restitution based on quasi-contract / unjust enrichment.

13. Plaintiff seeks damages, injunctive and declaratory relief, restitution, attorneys' fees and costs, and a jury trial.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists because Defendant is a Delaware corporation with its principal place of business in New York, and Plaintiff is a citizen of Florida. The amount in controversy exceeds $5,000,000 for Plaintiff and the putative Class, exclusive of interest and costs, reaped by Defendant from its transactions with Plaintiff and the putative Class, as a direct and proximate result of the wrongful conduct alleged herein and by the injunctive and equitable relief sought.

15. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred within Volusia County, Florida, which lies in this District and the Orlando Division, where Plaintiff saw the Representation and purchased and received the Product.

## PARTIES

16. Plaintiff, Mr. Pardo-Manrique, is an adult individual and a citizen of the State of Florida.

17. Plaintiff maintains his primary residence in Deland, Volusia County, Florida, and thus is domiciled in Volusia County, Florida.

18. Plaintiff is a "consumer" as defined by § 501.203(7), Fla. Stat.

19. Plaintiff regularly purchased the Representative Product for his personal use, in Florida, from the retailer Publix.

20. Defendant, Chobani, LLC, is a Delaware limited liability company with its principal place of business in New York, New York. Defendant may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

21. Defendant formulates, manufactures, markets, labels, distributes, and sells the Chobani® Products, including the Products at issue in this action, throughout Florida and the United States. Defendant is responsible for the content of the Products' labels, packaging, and advertising.

## FACTUAL ALLEGATIONS

### Sugar Content Is Material to Consumers' Purchasing Decisions

22. Whether a product contains sugar is a decisive purchasing factor for a large share of American consumers. In the International Food Information Council's 2025 Food & Health Survey, three in four Americans reported that they were trying to limit or avoid sugar in their diets, and more than six in ten said they were concerned

about the amount of sugar they consume.[1] For these consumers, sugar is not a neutral attribute but rather it is the thing they are shopping to avoid.

23. Public-health guidance reinforces that concern. The federal government's own nutrition policy reflects this concern: the 2025–2030 Dietary Guidelines for Americans state that "no amount of added sugars . . . is recommended or considered part of a healthy or nutritious diet."[2] The World Health Organization strongly recommends adults to hold free sugars below ten percent of total daily energy intake, and to aim for five percent or less.[3] The American Heart Association sets a tighter ceiling still, recommending that added sugars be kept below six percent of daily calories.[4] Consumers who follow this guidance treat a product's sugar content as dispositive.

24. Consumers act on that concern at the shelf. Three in four Americans are trying to limit or avoid sugars in their diets.[5] Among Americans who report trying to

[1] Int'l Food Info. Council, 2025 Food & Health Survey 67, 75 (Jan. 13, 2026), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Full-Report.pdf (last accessed September 3, 2026).
[2] U.S. Dep't of Health & Human Servs. & U.S. Dep't of Agric., Dietary Guidelines for Americans, 2025–2030 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf (last accessed September 3, 2026).
[3] World Health Org., Guideline: Sugars Intake for Adults and Children (2015), https://iris.who.int/server/api/core/bitstreams/4be74f01-de93-4596-bbd1-02a97afb1221/content (last accessed September 3, 2026).
[4] Am. Heart Ass'n, Added Sugars (Aug. 2, 2024), https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars (last accessed September 3, 2026).
[5] Int'l Food Info. Council, 2025 Food & Health Survey 67, 75 (Jan. 13, 2026), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Full-Report.pdf (last accessed September 3, 2026).

limit or avoid sugar, more than one in four (27%) buy products labeled "sugar free" when available.[6] For a substantial segment of shoppers, then, a front-of-package "Sugar-Free" claim is not incidental marketing. It is the specific cue they look for and the basis on which they decide what products to purchase.

25. That demand supports a large and fast-growing market. One industry analyst valued the global sugar-free food market at roughly $45.3 billion in 2024 and approximately $48.1 billion in 2025, and projects it to approach $83.2 billion by 2034. The growth of the sugar-free food market is driven by consumers shifting toward products they perceive as healthier.[7]

26. Manufacturers understand this demand and price to it. A "Sugar-Free" or "Zero Sugar" claim allows a product to command a premium over comparable products that carry no such claim, and manufacturers accordingly place these claims on the front of the package, where they are most likely to convert a shopper into a buyer.

27. Sugar content is therefore material. A reasonable consumer treats a "Sugar-Free" representation as a genuine reason to select one product over another and to pay more for it and, being unable to test a product's chemistry in the aisle, takes the representation at face value and relies on it.

---

[6] *See Id*.

[7] Precedence Research, Sugar-Free Food Market Worth USD 83.20 Billion by 2034, Reflecting a Shift Toward Healthier Lifestyles, Yahoo Fin. (Oct. 10, 2025) (paid press release), https://finance.yahoo.com/news/sugar-free-food-market-worth-141000442.html (Last accessed September 3, 2026).

28. Defendant created the Products' packaging and advertising around that reliance, placing the "Zero Sugar" claim front and center to capture both the price premium and the health-conscious buyers those claims attract even though, as set forth below, the Products are sweetened with a sugar.

29. Defendant has capitalized on that demand. It markets Products sweetened with allulose, a sugar, while labeling and advertising them as "Zero Sugar." Defendant thereby obtained an unfair advantage over competitors whose sugar-free claims are true, at the expense of unwitting consumers.

**Defendant's "Zero Sugar" Representation**

30. Plaintiff has regularly purchased the Chobani® "Zero Sugar" Yogurt over the past year including the Black Cherry, Blueberry, Vanilla, and Mixed Berry varieties.

31. As one example, Plaintiff purchased the Chobani® Zero Sugar Greek Yogurt Mixed Berry Flavored Four Count Product from the Publix in Deland, Florida on September 2, 2026.

32. Defendant prominently states on the front of the Representative Product's packaging that the Product contains "Zero Sugar." The Representation appears on the 4-count outer cardboard carton, the front of individual single-serve plastic cups, and on the peel-off foil lids of individual single-serve plastic cups. A consumer thus encounters the Representation both when selecting the Product and again each time he opens a cup to use it, as seen below:




33. Defendant carries the same "Zero Sugar" Representation onto third-party retail platforms like Amazon.com through which the Products are sold, as seen in the example Representative Product listing title below:



[8]

34. The listing's expandable "Top highlights" section, seen below, repeats the Representation. Defendant describes the Product as being "Sugar free" and containing "No sugar."

---

[8] Chobani Zero Sugar Mix Berry, Amazon.com, https://www.amazon.com/Chobani-Sugar-Mixed-Berry-Multipack/dp/B08YT186Z9/ (last visited Sept. 4, 2026). (Amazon retail listing for the Representative Product).

**Top highlights**

| | |
|---|---|
| **Item Weight** | 150 g |
| **Brand** | Chobani |
| **Flavor** | Mixed Berry |
| **Specialty** | GMO-free, Sugar free, lactose free |
| **Package Information** | Stick |

**About this item**

- No sugar
- No artificial sweeteners
- No Lactose
- No preservatives
- No GMO ingredients

[9]

35. The Representative Product's Nutrition Facts panel refutes the Representation. The panel declares "Total Sugars 0g" and "Incl. 0g Added Sugars," yet the ingredients list allulose, a sugar, as seen below:




[9] *Id.*

36. Despite the Products containing allulose, a sugar, Defendant applies the identical "Zero Sugar" Representation across the Product line regardless of flavor, individual serving cups, multi-cup packs, or multi-serve containers.

**Allulose Is a Sugar**

37. Allulose is a sugar. Chemically, allulose is a monosaccharide — the C-3 epimer of D-fructose — meaning that allulose and fructose share the same molecular formula and connectivity and differ only in the spatial orientation of a hydroxyl group at the third carbon.[10]

38. Allulose is not merely a sugar as a matter of chemical classification. It is also used as a sugar. Allulose has roughly 70% of the sweetness of table sugar and is used in gram-scale quantities as a bulk sweetener and as a partial replacement for added sugars.[11]

39. Allulose also behaves like sugar in food, with solubility, water activity, and viscosity similar to fructose.[12] It is widely regarded as a substitute for table sugar.

---

[10]Han-Joo Maeng et al., Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes, 8 Foods art. 448, at 1-2 (2019), https://doi.org/10.3390/foods8100448; Youngji Han et al., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults, 10 Nutrients art. 2010, at 1-2 (2018), https://doi.org/10.3390/nu10122010.

[11] *See* Youngji Han et al., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*, 10 Nutrients 2010, at 2 (2018) (allulose "maintains approximately 70% of sweetness relative to sugar"); Han-Joo Maeng et al., *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 Foods 448, at 2 (2019) ("D-allulose has 70% of the sweetness of sucrose")

[12] *See* Han, *supra*, at 10 (allulose's "chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity").

40. Allulose is a listed ingredient in the Products. Under federal labeling law, ingredients are listed in descending order of predominance by weight. *See* 21 C.F.R. § 101.4(a)(1). On the Representative Product's label, allulose is listed as the ingredient fourth just ahead of the ingredients which comprise 2% or less of the product by weight. Consequently, allulose is present in the Representative Product and accounts for more than a trivial or *de minimis* amount of the formulation.

**Allulose Is a "Sugar" Under the Governing Federal and Florida Standards**

41. Congress authorized the U.S. Food and Drug Administration ("FDA") to regulate food labeling under the Federal Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 *et seq.* FDA promulgated the relevant regulations at 21 C.F.R. part 101.

42. The "Zero Sugar" statement is a nutrient content claim because it expressly characterizes the level of sugar in the Products. *See* 21 C.F.R. § 101.13(b). Such claims may be made only in accordance with FDA's regulations.

43. Section 101.60(c)(1) governs "sugar free," "zero sugar," and equivalent claims. It provides that such terms may not be used unless, among other requirements, the food (i) contains less than 0.5 gram of sugars per serving, and (ii) contains no ingredient that is a sugar (beyond a disclosed, dietarily insignificant amount). *See* 21 C.F.R. § 101.60(c)(1)(i)-(ii).

44. To measure sugars, § 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which defines "Total Sugars" as "the sum of all free mono- and

disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, a free monosaccharide, falls squarely within that definition.

45. The FDA has repeatedly confirmed that allulose is a sugar under this definition. In its 2016 rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would exclude it.[13] The definition turns on chemical structure — "the number of saccharide units" — not on physiological effects such as caloric value or glycemic response.[14]

46. The United States has recently reaffirmed this position. In an amicus brief filed at the invitation of the U.S. Court of Appeals for the Seventh Circuit in a materially identical allulose case, the Government stated that "allulose is a 'sugar' as that term is defined at 21 C.F.R. § 101.9(c)(6)(ii)" and that the phrase "all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)" is inclusive and illustrative, not restrictive.[15]

**<u>The "Zero Sugar" Claim Is Prohibited, Not Permitted, by Federal Law</u>**

47. As set forth *supra*, Allulose is a listed ingredient in the Products.

---

[13] 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016) (allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending future rulemaking).
[14] 58 Fed. Reg. 2,079, 2,098 (Jan. 6, 1993) (sugars definition turns on "the number of saccharide units," not physiological effects).
[15] Brief for the United States as Amicus Curiae at 2, 11–24, Franco v. Chobani, LLC, No. 25-2087 (7th Cir. June 29, 2026) ("allulose is a 'sugar' as that term is defined at 21 C.F.R. § 101.9(c)(6)(ii)").

48. Under FDA regulations, a food bearing a "sugar free" or "zero sugar" representation must contain less than 0.5 grams of sugars per reference amount customarily consumed. *See* 21 C.F.R. § 101.60(c)(1).

49. Because allulose is a sugar and the Products contain more than 0.5 grams of allulose, the Products cannot lawfully bear the "Zero Sugar" Representation.

50. The FDA's 2020 guidance does not permit the Representation. In that guidance, FDA announced only that it would exercise enforcement discretion as to certain *Nutrition Facts* declarations for allulose — namely, the Total Sugars and Added Sugars quantities, the Added Sugars percent Daily Value, and the caloric value of allulose — pending future rulemaking.[16]

51. The FDA made no comparable statement as to nutrient content claims. The 2020 guidance does not authorize "0g Sugar," "Sugar-Free," or "Zero Sugar" claims on allulose-sweetened products, and it disclaims any binding effect. A "Zero Sugar" claim on a product containing allulose therefore violates § 101.60(c)(1) regardless of the enforcement discretion FDA extended to the Nutrition Facts panel.

52. Accordingly, no federal or state law requires or specifically permits Defendant to represent the Products as "Zero Sugar." Plaintiff does not seek to impose any requirement different from, or in addition to, federal law; he seeks to enforce

[16] FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 1–9 (Oct. 2020), https://www.fda.gov/media/123342/download.

labeling requirements identical to the federal standards that Florida has adopted. See 21 U.S.C. § 343-1(a)(5).

**The Products Are Misbranded Under Florida Law**

53. Florida has adopted the federal food-labeling requirements as state law. Under the Florida Food Act, Chapter 500, Florida Statutes, the Florida Department of Agriculture and Consumer Services has adopted the federal food regulations at 21 C.F.R. Part 101 by reference, expressly incorporating them "as rules under the Florida Food Act, Chapter 500, F.S." Fla. Admin. Code R. 5K-4.002(1)(d). The nutrient content claim regulation (§ 101.60), the sugars definition (§ 101.9(c)(6)(ii)), and the nutrient content claim framework (§ 101.13) are therefore Florida law.

54. A food is misbranded under Florida law if its labeling is false or misleading in any particular. *See* § 500.11(1)(a), Fla. Stat. It is unlawful to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. *See* § 500.04, Fla. Stat.; *see also* 21 U.S.C. § 343(a)(1), (r)(1)(A).

55. The Products cannot lawfully bear the "Zero Sugar" Representation for two independent reasons. First, a "sugar free" or similar claim is prohibited on any food that contains an ingredient that is a sugar (beyond a disclosed, dietarily insignificant amount). 21 C.F.R. § 101.60(c)(1)(ii). Allulose is a sugar and is an ingredient in every Product. Second, and independently, upon information and belief, each serving contains more than 3 grams of allulose which is an amount exceeding the 0.5-gram limit of § 101.60(c)(1)(i). On either ground, the Products are misbranded

under Florida and federal law, and Defendant's advertising, distribution, and sale of the Products are unlawful.

**Reasonable Consumers Cannot Detect Defendant's Deception**

56. Reasonable consumers have no reason to look past the conspicuous "Zero Sugar" claim on the front of the package. Consumers are not expected to look beyond a prominent front-label representation to discover that it is false, and are not required to perform independent scientific research into the chemical classification of listed ingredients.

57. Allulose is not a common household term. Reasonable consumers, including Plaintiff, are unlikely to recognize it or infer from the ingredient list that it is a sugar. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry.

58. Defendant's deception is compounded by the "0g" Total Sugars line in the Nutrition Facts panel, which reinforces the no-sugar message and makes it effectively impossible for a consumer to discover that the Products do, in fact, contain a sugar.

**Defendant Knew the Representations Were False and Plaintiff Was Injured**

59. Defendant knew, or should have known, that the Representation was false and misleading when it labeled, advertised, distributed, and sold the Products.

60. Defendant knew that the Products contain allulose, that allulose is a sugar, that its labels represented that the Products contained no sugar, that reasonable

consumers would rely on those labels, and that the Representation enabled Defendant to charge a premium.

61. Defendant controlled, or participated in, making the Representation and could have stopped using it or ensured it was true. Despite its knowledge, Defendant continued to use the Representation, causing consumers to buy or overpay for the Products.

62. By deceiving consumers about the Products' nature and ingredients, Defendant took market share from truthful competitors and commanded a price premium, thereby increasing its profits.

63. When Plaintiff purchased the Products, he did so in reliance upon Defendant's Representation that the Products had "Zero Sugar" and contained "0g" Total Sugars.

64. Had Plaintiff known that the Products contained sugar, he would not have purchased the product, or would have paid less for it.

65. Plaintiff and the Class paid a price premium — that is, they paid more than they otherwise would have, or purchased Products they would not have purchased at all, because of the "Zero Sugar" Representation. Plaintiff and the Class did not receive the benefit of their bargain because the Products were not, in fact, sugar free.

66. Plaintiff and the Class suffered injury in fact and lost money as a direct and proximate result of Defendant's wrongful conduct.

67. Plaintiff remains interested in purchasing Chobani® yogurt that is truly free of sugar. He would purchase the Products again if he could rely on the "Zero Sugar" Representation as truthful. Because he cannot determine whether the Representation has been or will be corrected, he is likely to be misled again absent injunctive relief.

68. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiff's inability to rely on the Representation in deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Representation can address that prospective harm.

## CLASS ACTION ALLEGATIONS

69. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and the following Class:

> **The "National Class": All natural persons who, within the four (4) years preceding the filing of this Complaint, purchased any of the Products in the United States for personal use and not for resale.**
>
> **The "Florida Class": All natural persons who, within the four (4) years preceding the filing of this Complaint, purchased any of the Products in the State of Florida for personal use and not for resale.**

70. Subject to information obtained through discovery, the Class definitions may be amended or refined, including through the use of subclasses, and Plaintiff reserves the right to do so.

71. Excluded from the Classes are Defendant and its officers, directors, and employees; any entity in which Defendant has a controlling interest; the judge and magistrate judge assigned to this action and their staff and immediate families; and Plaintiff's counsel.

72. **Numerosity (Fed. R. Civ. P. 23(a)(1)).** Members of the Classes are so numerous that joinder is impracticable. Upon information and belief, the Classes each include thousands of consumers. Their identities may be ascertained through Defendant's and retailers' records, and they may be notified by mail and/or publication.

73. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)).** Common questions of law and fact exist as to all Class members and predominate over any individual questions, including:

a. whether allulose is a sugar;

b. whether the Products contained "Zero Sugar" or were free of sugar;

c. whether the Representation was false, misleading, or deceptive;

d. whether the Representation was material to a reasonable consumer;

e. whether the Products are misbranded under Florida and federal law;

f. whether Defendant's conduct constitutes an unfair or deceptive act or practice under FDUTPA;

g. whether Defendant's conduct violated § 817.41, Fla. Stat.;

h. whether Defendant was unjustly enriched; and

i. whether Plaintiff and the Class are entitled to damages, restitution, and injunctive relief, and the proper measure thereof.

74. **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiff's claims are typical of the Class's claims. Plaintiff and the Classes were exposed to the same uniform Representation, purchased the same Products, and suffered the same injury — payment of a price premium for Products that were not free of sugar.

75. **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests antagonistic to the Classes and has retained counsel experienced in consumer class-action litigation who intend to prosecute this action vigorously.

76. **Superiority (Fed. R. Civ. P. 23(b)(3)).** A class action is superior to other methods for the fair and efficient adjudication of this controversy. The claims arise from common, uniform conduct; the cost and burden of individual litigation make individual redress impracticable given the modest value of each claim; and concentrating the claims in one forum avoids inconsistent judgments and conserves judicial resources. Because the material question — whether "Zero Sugar" is false as applied to an allulose-sweetened product — turns on an objective, reasonable-consumer standard, it is common to the Classes and does not require individualized proof of reliance.

77. **Rule 23(b)(2).** Defendant has acted on grounds generally applicable to the Classes by uniformly labeling and marketing the Products as "Zero Sugar," making

final injunctive and corresponding declaratory relief appropriate for the Classes as a whole.

78. All conditions precedent to this action have been performed, satisfied, waived, or excused.

**COUNT I**
**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, § 501.201 *et seq.*, FLA. STAT.**

***(On Behalf of the Florida Class)***

79. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78 as if fully set forth herein.

80. The Products are tangible goods with value, which Defendant advertised, offered, distributed, and sold in Florida.

81. Defendant engaged in "trade or commerce" within Florida as defined by § 501.203(8), Fla. Stat.

82. Section 501.204(1), Fla. Stat., prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The standard is objective: whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.

83. Defendant committed unfair and deceptive acts by representing that the Products are "Zero Sugar" when each serving contains allulose, a sugar. That Representation was likely to deceive, and did deceive, reasonable consumers.

84. Defendant's conduct is also a per se violation of FDUTPA because it violates the misbranding provisions of §§ 500.04 and 500.11(1)(a), Fla. Stat., which

adopt the federal food-labeling requirements of 21 U.S.C. § 343 and 21 C.F.R. §§ 101.13 and 101.60(c)(1).

85. The "Zero Sugar" Representation violates § 101.60(c)(1) on two independent grounds: the Products contain an ingredient that is a sugar, § 101.60(c)(1)(ii), and, upon information and belief, each serving contains allulose in an amount far exceeding the 0.5-gram limit of § 101.60(c)(1)(i). Either violation renders the Products misbranded.

86. No federal or state law required or specifically permitted Defendant to label the Products "Zero Sugar." To the contrary, that labeling is prohibited by 21 C.F.R. § 101.60(c)(1). The safe harbor in § 501.212(1), Fla. Stat., therefore does not apply.

87. The Representation was material. A reasonable consumer would find it material to the decision whether to purchase the Products and how much to pay. The Representation, and the reasonable-consumer understanding of it, are uniform across the Products and the Florida Class.

88. Defendant's violations were willful and knowing.

89. As a direct and proximate result of Defendant's unfair and deceptive acts, Plaintiff and the Florida Class were injured and suffered actual damages. They paid a price premium for the Products — they paid more than they would have paid, or purchased Products they would not have purchased, because of the Representation.

90. Pursuant to § 501.211(2), Fla. Stat., Plaintiff and the Florida Class are entitled to recover actual damages, together with attorneys' fees and court costs under § 501.2105, Fla. Stat.

91. Pursuant to § 501.211(1), Fla. Stat., Plaintiff and the Florida Class are also entitled to declaratory and injunctive relief directing Defendant to cease the false and misleading labeling and advertising and to disseminate corrective disclosures.

**COUNT II**
**VIOLATION OF § 817.41, FLA. STAT. (FALSE AND MISLEADING ADVERTISING)**

***(On Behalf of the Florida Class)***

92. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78 as if fully set forth herein.

93. Section 817.41(1), Fla. Stat., makes it unlawful to make or disseminate any "misleading advertisement." Defendant's "Zero Sugar" Representation, disseminated on the Products' labels and in Defendant's online marketing, is a misleading advertisement because it represents that the Products contain no sugar when each serving contains allulose, a sugar.

94. Defendant made the Representation knowing it was false or misleading, or with reckless disregard for its truth, and with the intent that consumers, including Plaintiff and the Class, rely on it.

95. Plaintiff and the Class justifiably relied on the Representation to their detriment, purchasing the Products and paying a price premium they would not otherwise have paid.

96. As a direct and proximate result of Defendant's misleading advertising, Plaintiff and the Class suffered damages and are entitled to recover actual damages, and, where warranted, punitive damages, together with attorneys' fees and costs.

## COUNT III
## UNJUST ENRICHMENT

***(On Behalf of the National Class)***

97. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78 as if fully set forth herein, and asserts this claim in the alternative to the extent any contract does not govern the subject matter of the dispute.

98. Plaintiff and the Class conferred a benefit on Defendant in the form of the monies they paid for the Products, the proceeds of which flowed to Defendant through its distribution and sale of the Products, including through retailers such as Wawa. Defendant would not have received those monies but for the "Zero Sugar" Representation.

99. Defendant had knowledge of, and voluntarily accepted and retained, that benefit.

100. Defendant obtained the benefit through its deceptive Representation. A portion of what Plaintiff and the Class paid — the price premium attributable to the Representation — reflects value Defendant obtained but did not confer. Under these circumstances, it would be inequitable for Defendant to retain that benefit without paying its value.

101. Plaintiff and the Class are entitled to restitution and disgorgement of the monies, profits, and other benefits Defendant obtained from its wrongful conduct, in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully requests that this Court enter judgment against Defendant as follows:

a. Certifying this action as a class action under Rule 23, appointing Plaintiff as class representative, and appointing the undersigned as class counsel;

b. Declaring that Defendant's conduct violates the statutes referenced herein;

c. Awarding actual damages as pled herein;

d. Awarding restitution and all other equitable monetary relief;

e. Granting injunctive and declaratory relief, including an order requiring Defendant to cease labeling, marketing, and selling the Products with the Representations and to make corrective disclosures;

f. Awarding pre-judgment and post-judgment interest as provided by law;

g. Awarding Plaintiff's and the Class's reasonable attorneys' fees, litigation expenses, and costs of suit; and

h. Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted on September 9, 2026 by,

**SERAPH LEGAL, P. A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
BGeiger@seraphlegal.com
Service@seraphlegal.com
Tel: 813-321-2348
*Counsel for Plaintiff*